1  **HEFNER, STARK & MAROIS, LLP**
   Howard S. Nevins (CA Bar Assn. No. 119366)
2  Aaron A. Avery (CA Bar Assn. No. 245448)
   2150 River Plaza Drive, Suite 450
3  Sacramento, CA 95833-3883
   Telephone: (916) 925-6620
4  Fax No: (916) 925-1127
   Email: hnevins@hsmlaw.com
5
   Attorneys for
6  KIMBERLY J. HUSTED,
   Chapter 7 Trustee
7

8              **UNITED STATES BANKRUPTCY COURT**

9                **EASTERN OF CALIFORNIA**
                   **(Sacramento Division)**
10

11  In re                          Case No.:  13-24651-B-7

12  DAVID MICHAEL FARLEY and       DC No.:    HSM-003
    KAREN LOUISE FARLEY,
13                                 Date:      April 8, 2014
            Debtors.               Time:      9:32 a.m.
14                                 Place:     501 I Street
                                              Sacramento, CA
15                                            Ctrm. 32, 6th Flr.
                                   Judge:     Hon. Thomas C. Holman
16

17       **TRUSTEE'S MOTION FOR APPROVAL OF SALE OF REAL**
      **PROPERTY (5201 WESTLEY ROAD) AND TO PAY EXPENSES OF SALE,**
18          **INCLUDING COMMISSION TO REAL ESTATE AGENT**

19       KIMBERLY J. HUSTED, the duly appointed Chapter 7 Trustee ("Trustee") in the

20  pending bankruptcy case of DAVID MICHAEL FARLEY and KAREN LOUISE FARLEY (the

21  "Debtors"), Case No. 13-24651-B-7, files this Trustee's Motion for Approval of Sale of Real

22  Property (5201 Westley Road) and to Pay Expenses of Sale, Including Commission to Real

23  Estate Agent ("Motion") as follows:

24       1.      This case was filed as a voluntary Chapter 7 case on April 4, 2013.  The Trustee

25  was appointed as Chapter 7 Trustee on April 4, 2013, and continues to serve in that capacity.

26       2.      Jurisdiction for the filing of this Motion exists pursuant to 28 U.S.C. §§ 157 and

27  1334; 11 U.S.C. §§ 363(b) and 503(b); and the reference to this Court by the District Court for

28  the Eastern District of California.

\\hsmsrv2\clients\Husted, Kimberly\Farley, David & Karen (7830-0022)\Pldg Trustee (hsm-03) sale mtn\pldg mtn sale westley prop.wpd

HEFNER, STARK & MAROIS, LLP
Sacramento, California

**Introduction and Relief Requested**

3.     One of the assets of the Estate, and the property that is the subject of this Motion, consists of the Estate's right, title, and interest in and to that certain real property commonly known as 5201 Westley Road, Placerville, CA 95667, APN 098-150-20-100 (the "Property").

4.     The Property was listed on the Debtors' Schedule A filed in this case on April 4, 2013, with an estimated value of $142,000.00, and a secured claim in the amount of $136,358.00 (the "Wells Fargo Lien").

5.     After the Trustee's appointment in this case, and based on her investigation of the Property, the Trustee elected to retain Reed Block Realty, a real estate brokerage firm ("Firm"), and specifically Reed Block, as her real estate agent (collectively "Agent"). An application requesting Court approval of the employment of the Broker/Agent on behalf of the Estate was filed on November 8, 2013, and the employment was approved by this Court on December 2, 2013.

6.     Pursuant to the efforts of the Agent, the Trustee has received and accepted an offer to purchase the Property for $234,000.00 from Tyler J. Wheeler and Jennifer Wheeler (collectively referred herein as "Buyer"), subject to court approval and overbidding. The terms of the proposed offer to purchase the Property are summarized in the description of the Purchase Agreement described below.

7.     This Motion seeks approval from the court for (i) the Trustee's entry of the Purchase Agreement and sale of the Property pursuant to the terms thereof, (ii) payment of the commission to Agent consistent with the approved listing agreement, if the proposed sale is approved and consummated with the proposed Buyer or any successful Qualified Overbidder (as described in the overbidding process below), and (iii) payment of other customary expenses of closing associated with this sale.

**Purchase Agreement**

8.     Buyer's offer to purchase has been accepted by the Trustee, as Seller, through the mutual execution of that certain California Residential Purchase Agreement and Joint

\\hsmsrv2\clients\Husted, Kimberly\Farley, David & Karen (7830-0022)\Pldg Trustee (hsm-03) sale mtn\pldg mtn sale westley prop.wpd

Escrow Instructions, and Addendum No. 1, dated as of February 12, 2014, and that certain Seller Multiple Counter Offer No. 1, dated as of February 14, 2014, and Counter Offer No. 2, dated as of February 16, 2014 (collectively, the "Purchase Agreement").  A true and correct copy of the Purchase Agreement is attached as Exhibit "A" to the Exhibits Cover Sheet filed and served with this Motion.

       9.      The material terms of the Purchase Agreement are as follows:

       a.      The proposed sale of the Property and the Purchase Agreement are subject to Bankruptcy Court approval through the granting of this Motion;

       b.      The Purchase Price for the Property is $234,000.00 ("Purchase Price" or "Sales Proceeds");

       c.      Buyer has deposited the sum of $1,000.00 (the "Deposit") into escrow. The Deposit is creditable against the Purchase Price and is non-refundable after satisfaction of all of Buyer's conditions to closing.  If Buyer fails to close the purchase due to default by Buyer, the Deposit shall be non-refundable and shall be retained by the Trustee as liquidated damages for such breach;

       d.      Buyer's obligation to purchase the Property is contingent upon (i) Buyer's review and approval of title to the Property and of the condition of the Property (to be completed within 17-days from execution of the Purchase Agreement) and (2) Buyer's obtaining a loan from the Veteran's Administration (the "VA Loan") for the balance of the Purchase Price and Buyer's share of closing costs not otherwise funded or credited by the Estate.  The Estate will provide a hazard disclosure statement and pest inspection report for the Property and Buyer will be responsible for all other inspection costs;

       e.      The Estate will credit Buyer at close of escrow the sum of $3,000.00 for Buyer's share of recurring and non-recurring closing costs;

       f.      The Estate will pay up to $2,000.00 for property costs not authorized for funding by the VA Loan, including clearance of Section 1 and 2 noted on the pest inspection report to be provided by the Estate;

       g.      Buyer will pay the Purchase Price and close escrow on or before the later

HEFNER, STARK & MAROIS, LLP
Sacramento, California

3

of thirty (30) days after full execution of the Agreement or 15 days from the filing of the Court order approving this Motion (the "Closing Date");

h.     The following closing costs will be allocated to the Estate and paid from the Sales Proceeds: (i) one-half the cost of the escrow fee; (ii) the premium for the standard coverage title insurance policy; (iii) the costs to prepare and record the grant deed and other costs related thereto, including the documentary transfer tax; (iv) the prorated share of real property taxes and assessments secured against the Property (including the costs to cure all delinquencies related thereto); (v) the prorated share of rents and utilities related to the Property (including the costs to cure all utility delinquencies related thereto); (vi) the credits and costs, up to a total of $5,000.00, referred to in subsections 9.e and 9.f above; and (vii) any amounts required to be withheld for state or federal taxes. The portion of the Sales Proceeds remaining after deduction of the foregoing costs allocable to the Estate as Seller, and after payment of the commission to the Agent as approved by the Court, shall be referred to herein as the "Net Sales Proceeds;"

i.     Trustee is not aware of any secured interests against the Property other than the Wells Fargo Lien disclosed on Debtor's Schedules, which Trustee anticipates paying off in full at Closing. If any other monetary liens are discovered to exist against the Property, delivery of title free and clear from such other monetary liens may require the cooperation and consent of any lien holders. If any other such secured creditor's consent cannot be obtained by the date scheduled for closing, Buyer's sole recourse will be to either assume the lien, without adjustment to the Purchase Price, or terminate the Agreement and receive the refund of the Buyer's deposit;

j.     Buyer will acquire, as part of the Property, all improvements and any fixtures located on the Property in which this bankruptcy Estate owns any interest therein;

k.     Buyer will acquire the Property in its "AS IS," "WHERE IS," "WITH ALL FAULTS" condition. Trustee is making no representations or warranties, directly or indirectly, with respect to the condition or history of the Property and has no duty to inquire or investigate or provide any disclosures related to the Property;

HEFNER, STARK & MAROIS, LLP
Sacramento, California

4

l.      Buyer shall rely solely on its own investigation of the Property in the decision to acquire the Property; and

m.      The proposed sale to Buyer is subject to overbidding at the hearing on this Motion.  If no overbids for the Property are made at the hearing on this Motion, or if the Buyer is the highest bidder for the Property at the hearing on the Motion, the Deposit shall be applied to the Purchase Price or the highest price bid by Buyer at the hearing on the Motion, whichever is greater.  If a Qualified Overbidder outbids Buyer, Buyer may elect to remain available for 30 days after the hearing to buy the Property at the Purchase Price or its highest bid, if the overbidder fails to close and Buyer is the next highest bidder on the Property.   If a Qualified Overbidder outbids Buyer and closes its purchase of the Property, then the Purchase Agreement shall terminate and the Deposit shall be returned to Buyer.

### Fair Price for Property

10.      As set forth in its Schedule A filed April 4, 2013, the Debtors valued the Property at approximately $142,000.00.  Pursuant to the Purchase Agreement, the Purchase Price will exceed Debtors' estimated value by approximately $92,000.00 (representing an increase from Debtor's estimated value of approximately 65%.  Accordingly, based in part on this significant increase in price from Debtor's estimated value, the Trustee believes that the Purchase Price represents fair value to the Estate and a fair market value for the Property.

11.      Furthermore, the Trustee has independently concluded, based on her investigation, that the Purchase Price of $234,000.00 appears to be a fair and reasonable price for the Property. This conclusion is based, in part, on the Trustee's review with the Agent of property values for similarly situated properties in the area and the condition of the existing manufactured home improvements on the Property that are included within the Property.

### Proposed Terms for Overbidding

12.      The Trustee proposes that any persons or entities wishing to bid on the Property be required to first become a qualified overbidder (a "Qualified Overbidder") in the manner set forth below, prior to the commencement of the hearing on the Motion.

13.      Any person or entity wishing to become a Qualified Overbidder must deliver to

HEFNER, STARK & MAROIS, LLP
Sacramento, California

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1   the Trustee, no later than two (2) business days prior to the date scheduled for the hearing on

2   this Motion, (i) the Overbidder Deposit and (ii) a showing of financial ability to perform. The

3   "Overbidder Deposit" shall consist of a non-refundable deposit in the amount of $1,000.00, in

4   the form of a cashier's check or money order made payable to Kimberly J. Husted, Chapter 7

5   Trustee of the David Michael Farley and Karen Louise Farley Bankruptcy Estate," which will

6   be applied to the purchase price for the Property if the Qualified Overbidder is the successful

7   purchaser following the hearing on the Motion. The financial showing shall include, without

8   limitation, either the overbidder's qualifications acceptable to Trustee for obtaining either a VA

9   loan for 100% financing or a conventional loan for 80% financing of the Purchase Price and

10  the ability to fund the balance of the Purchase Price at closing, or proof of the ability of the

11  Qualified Overbidder to fund payment of the entire Purchase Price in cash.

12          14.     Prior to the hearing, a Qualified Overbidder may obtain permission from the

13  Trustee to inspect the Property in order to investigate the Property and waive all contingencies

14  to its purchase thereof, including approval of the condition of the property and state of title.

15  Any such inspection shall be subject to the Qualified Overbidder (i) delivering the Deposit and

16  showing of financial ability to perform as provided above, and (ii) executing a form of Purchase

17  and Sale Agreement on the same terms as the Purchase Agreement entered into by Buyer.

18  By submitting an overbid at the sale hearing, any Qualified Overbidder shall be deemed to

19  have conclusively waived all contingencies to the purchase of the Property under the Purchase

20  Agreement, except for court approval of the sale to such Qualified Overbidder.

21          15.     If a Qualified Overbidder is not successful at the hearing, the Overbidder Deposit

22  shall be returned to such Qualified Overbidder upon the entry of the order confirming the

23  successful bidder for the Property. If a Qualified Overbidder is approved as the high bidder

24  but breaches its obligation to consummate the sale for any reason other than a failure to

25  obtain financing for such purchase or otherwise breaches its covenants to the Trustee and the

26  Estate, its Overbidder Deposit shall be retained and administered as an asset of the Estate.

27          16.     The Trustee proposes that the initial overbid be $235,000.00 and subsequent

28  overbids, if any, be in increments of $1,000.00. The high bidder must purchase the Property

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1  on terms identical to those set forth in the Purchase Agreement and subject to any
2  modifications ordered by the Court.   If the Buyer is the high bidder, it shall pay the greater of
3  its high bid or $234,000.00 for the Property.  In the event a Qualified Overbidder outbids the
4  Buyer, Buyer's offer to purchase the Property pursuant to the terms of the Purchase
5  Agreement may be maintained by Buyer as a back-up offer (with the Purchase Price based
6  on the highest bid made by Buyer at the hearing on the Motion), at Buyer's election at the
7  hearing on this Motion.  Any such back-up offer shall become effective upon the overbidder's
8  failure to close in accordance with the terms of the Purchase Agreement, as may be modified
9  by the Court, so long as Buyer's Purchase Price is the next highest bid for the Property.  In any
10 event, the Purchase Agreement shall terminate and the Deposit shall be returned to Buyer
11 upon close of escrow for the sale of the Property by any successful Qualified Overbidder.

<h3 align="center">Authorization to Pay Commission to Agent</h3>

13      17.    The Trustee required the professional services of Agent to act as the Estate's
14 agent to market and sell the Property.  By separate application, the Trustee sought approval
15 by the court to employ the Agent on behalf of the Estate pursuant to the terms of a listing
16 agreement filed therewith (the "Listing Agreement").

17      18.    The Listing Agreement provides for the Agent to receive a commission of six
18 percent (6%) of the sales price of the Property.  Based on her experience as a Chapter 7
19 trustee, the Trustee believes such a commission is within the range of customary and
20 reasonable fees charged and paid in the area for professional brokerage services in
21 connection with residential real estate such as the Property.  In consideration of the Agent's
22 efforts to market the Property and obtain Buyer's offer to purchase the Property, and
23 consistent with the terms of the Court-approved Listing Agreement, the Trustee seeks
24 authorization from the Court to pay the commission to Agent upon closing of escrow from the
25 Sales Proceeds.

26      19.    The Trustee is informed and believes that Broker is disinterested within the
27 meaning of the Bankruptcy Code for purposes of this engagement.  In particular, as described
28 in the Purchase Agreement, the Broker represents only the Trustee in this transaction and the

1  Buyer is represented by another agent, Coldwell Banker.  The Trustee understands that, if

2  payment of the commission to Broker is approved by the court, the Broker will be sharing half

3  of the commission to Coldwell Banker at closing as a cooperating broker on this transaction.

4       20.    The Trustee believes that Agent has carried and continues to carry out its

5  responsibilities under the Listing Agreement and that payment of the commission pursuant to

6  the Listing Agreement is appropriate.

7       **WHEREFORE,** the Trustee respectfully requests the Court enter an order authorizing

8  her to:

9       1.    sell the Property to the Buyer on the terms and conditions set forth above and

10  in the Purchase Agreement, or alternatively to the successful Qualified Overbidder at the

11  hearing on the Motion on the terms set forth in the Purchase Agreement and subject to any

12  modifications ordered by the Court;

13       2.    sell the Property on an "as is" "where is" "with all faults" basis, with no

14  representations or warranties, express or implied, with respect to the Property;

15       3.    sign any and all documents that may be appropriate and/or necessary to

16  consummate the sale;

17       4.    pay the commission to Agent required under the Listing Agreement approved by

18  separate motion, upon the closing of the sale of the Property from the Sale Proceeds thereof;

19       5.    pay the reasonable and necessary costs and expenses of closing through

20  escrow, including the Estate's pro-rata share of real property taxes and assessments secured

21  against the Property and the amount of all delinquent taxes, assessments and utilities secured

22  against the Property, upon the closing of the sale from the Sale Proceeds thereof;

23       6.    credit Buyer at close of escrow the sum of $3,000.00 for Buyer's share of

24  recurring and non-recurring closing costs and pay up to $2,000.00 for property costs not

25  authorized for funding by the VA Loan from the Sale Proceeds; and

26  ///

27  ///

28  ///

HEFNER, STARK & MAROIS, LLP
Sacramento, California

8

7.    pay to Wells Fargo from the remaining Net Sales Proceeds the outstanding undisputed amount owed on the Wells Fargo Lien to obtain the releases of the Wells Fargo Lien from the Property, upon the closing of the sale from the Sale Proceeds thereof.

Dated: March  6, 2014

HEFNER, STARK & MAROIS, LLP

By  *Howard S. Nevins*

Howard S. Nevins, Attorneys for
KIMBERLY J. HUSTED, Chapter 7 Trustee

HEFNER, STARK & MAROIS, LLP
Sacramento, California

9